MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

CRIMINAL ACTION

VERSUS

NO. 14-106-JJB

GERARD LATHAN SMITH

**RULING ON MOTION TO SUPPRESS**

This case is before the Court on a Motion to Suppress (Doc. 15) filed by the defendant, Gerard Lathan Smith (Smith). The United States filed an opposition (Doc. 17), and the Court held a hearing on February 2, 2015. After the hearing, Smith (Doc. 26) and the government (Doc. 27) filed post-hearing briefs.

**Background**

On June 26, 2014, Sgt. Christopher Green (Sgt. Green) was near I-10 in West Baton Rouge Parish when he received information from DEA Agent Paul Marrioneaux (Marrioneaux) about a vehicle that may be transporting contraband. When Sgt. Green found the vehicle, he stopped it for following too closely and illegally dark window tint.[1] Sgt. Green questioned the driver, Smith, about his expired insurance coverage[2] and travel itinerary. After questioning, the defendant changed his story and ultimately settled on "just riding" as his explanation. Sgt. Green then asked Smith to exit the vehicle and observed that the defendant appeared nervous—his hands were shaky, for example—and that there were bulges in his pockets consistent with large amounts of currency. Once Smith was out of the vehicle, Sgt. Green returned to his cruiser to run a computer check. The computer search revealed that Smith was on supervised release. Sgt. Green then got out of his cruiser to talk with Smith.

---

[1] Both of these are violations of Louisiana's criminal code.
[2] He discovered that Smith's insurance had lapsed when he ran the vehicle's plates.

1

Sgt. Green questioned Smith about his supervised release while he conducted a cursory frisk, in which he felt the bulges in defendant's pant pockets. Smith indicated that he thought the officer would keep him longer if he were honest about his supervised release. Regarding the money, Smith told Sgt. Green that he had five thousand dollars on him for "start-up" costs for a business. He further denied having any contraband in the vehicle. Approximately eleven minutes after stopping Smith, Sgt. Green asked for consent to search the vehicle. Sgt. Green informed Smith that he could refuse; Smith said that Sgt. Green would just get a warrant if he refused, and Sgt. Green responded that he would not. Instead, Sgt. Green told Smith that he had a canine with him and would conduct a sniff of the vehicle if Smith refused. Sgt. Green again told Smith that he could refuse, but Smith told him to search the vehicle. In the vehicle, Sgt. Green found a hidden compartment with approximately one kilogram of cocaine, and he arrested Smith. Later, Smith filed a motion to suppress the evidence from the traffic stop, claiming that the traffic stop was improper and his consent, coerced.

**Law**

There are two elements of Smith's argument: first, he argues that the stop was improper; second, he argues that his consent was coerced. The Court will address each argument in turn.

I. The Traffic Stop

An officer may stop a vehicle when there is probable cause that it is violating traffic laws. *Whren v. United States*, 517 U.S. 806, 809 (1996). If there is an objective basis for the stop, whether the officer was using this basis as a pretext to stop the vehicle for some other reason does not factor into the constitutional analysis; an objective basis alone is sufficient to make the stop constitutionally permissible. *Id*. at 810–12. When conducting a traffic stop, an officer may perform several tasks pursuant to the stop, including asking about the occupants' itinerary and

running computer checks. *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993). Additionally, "an officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the stop's duration." *Arizona v. Johnson*, 555 U.S. 323, 325 (2009). Smith argues that the officer's testimony is not credible, implying that the allegations that Smith was following too closely and had illegally dark tint are false. He also argues that Sgt. Green's questions and conduct far exceeded the scope of a traffic stop. The government claims that Smith is essentially arguing that the pretext should render the stop unconstitutional, a proposition rejected by the Supreme Court, and that Sgt. Green's questions and request to search did not "measurably extend" the stop.

Although Sgt. Green did receive information about Smith's vehicle before stopping him, the Supreme Court has ruled stops with an objective basis, even if that basis is a pretext, are constitutional. Although it is questionable that Sgt. Green could evaluate the window tint from his position, there was still probable cause that Smith was violating at least one traffic law, giving Sgt. Green a constitutionally permissible reason to initiate a traffic stop. Therefore, the nature of the stop is not sufficient grounds to suppress the evidence that resulted from it. Sgt. Green's questioning about contraband, if unrelated to following too closely and tinted windows, did not "measurably extend" the stop; his questions were short and pointed and did not add any significant length of time to the stop. Consequently, the questions unrelated to following too closely and the window tint also are insufficient to constitute a basis for suppressing the evidence that resulted from the stop.

II. Consent

Smith's next argument is that his consent to search the vehicle was coerced. Courts determine voluntariness of consent by looking at the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). When evaluating whether consent was voluntary, courts in the Fifth Circuit consider six factors:

> 1) the voluntariness of defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found.

*United States v. Arias-Robles*, 477 F.3d 245, 248 (5th Cir. 2007). Consent must be proven by the government, and it must do so by a preponderance of the evidence. *Id*. The government argues that the facts, taken as a whole, support that consent was voluntary. Although they concede that the first factor favors Smith, they argue that the other factors, particularly the second and fourth, support a finding that Smith voluntarily consented. Smith, meanwhile, argues that the evidence demonstrates that Sgt. Green coerced him.

The first factor, as the government admits, favors Smith; he was not free to leave the traffic stop, rendering his custodial status involuntary. For the second factor, however, Smith has failed to show that there were coercive police procedures. Although Sgt. Green indicated he was going to run a dog by the car regardless of what Smith did, he also informed Smith of his right to refuse consent a search multiple times and remained pleasant and polite—he did not try to bully Smith or intimidate him. Smith was also cooperative with Sgt. Green from the outset, and that pushes the third factor in favor of the government. The fourth factor also favors the government, as Sgt. Green informed Smith of his right to refuse multiple times. Regarding Smith's education and intelligence, not much evidence exists to these attributes, but on the video, he appeared coherent and to understand Sgt. Green. Finally, the sixth factor leans in favor of Smith; he had

cocaine in his vehicle, and though the government argues that its concealed nature means that he did not expect it to be found, Smith was aware that Sgt. Green had a trained canine, and his reaction to discovering this[3] is further evidence that this factor leans in his favor. Ultimately, however, after analyzing all of the factors and considering the totality of the circumstances, the Court finds that the government has met its burden. Sgt. Green repeatedly informed Smith of his right to refuse, behaved professionally and courteously rather than abrasively, and Smith showed no sign of not understanding his right to refuse. Although Smith had drugs in his vehicle and had no ability to leave the custodial stop, these do not overcome the rest of the circumstances, and these, as a whole, demonstrate that Smith knew what was happening and chose, of his own volition, to allow Sgt. Green to search his vehicle.

## Conclusion

For the foregoing reasons, the defendant's Motion to Suppress (Doc. 15) is DENIED.

Signed in Baton Rouge, Louisiana, on June 5, 2015.

	**JUDGE JAMES J. BRADY**
	**UNITED STATES DISTRICT COURT**
	**MIDDLE DISTRICT OF LOUISIANA**

---

[3] He yelled an expletive.